ONE THOUSAND SEVEN HUNDRED AND FIFTY-SIX SHARES OF CAPITAL STOCK (UNITED STATES v.). See Case No. 15,961.

ONE THOUSAND SIX HUNDRED AND TWENTY-FIVE VITRIFIED PIPES (DUNHAM v.). See Case No. 10,536.

ONE THOUSAND THREE HUNDRED AND EIGHTY-TWO HOGSHEADS OF SUGAR (UNITED STATES v.). See Cases Nos. 15,962 and 15,963.

ONE THOUSAND THREE HUNDRED AND SIXTY-THREE BAGS OF MERCHANDISE (UNITED STATES v.). See Case No. 15,964.

---

## Case No. 10,535.

ONE THOUSAND TWO HUNDRED AND FIFTY-THREE BAGS OF RICE.

ONE HUNDRED AND THREE CASKS OF RICE.

[Blatchf. Pr. Cas. 211.] [1]

District Court, S. D. New York. Sept., 1862.

PRIZE — WHAT IS — WHO AUTHORIZED TO MAKE PRIZES—ENEMY PROPERTY—SEIZURE ON LAND NEAR WATER.

1. Property seized by an armed vessel of the United States empowered to make prizes while afloat in an enemy port, on board of an enemy vessel, is lawful prize under the law of nations.

2. Enemy property captured by a public vessel in an enemy port, although, when seized, stored in a warehouse on land, near the water, *held*, under the facts in this case, to be lawful prize.

In admiralty.

---

[1] [Reported by Samuel Blatchford, Esq.]

BETTS, District Judge. The first above-named action is for the forfeiture of 1,253 bags of rice captured in lighters afloat on the Edisto, or North Santee river, in South Carolina, on the 30th of January, 1862, by the United States gunboat Albatross and her consort, and brought into this port for adjudication. The lighters had, at the time of the capture, no crews or persons on board, and have not been brought into port for adjudication. The gunboats were armed vessels of the United States, empowered to make prizes, and the property seized was taken afloat, in an enemy port, on board enemy vessels. That is a capture within the law of prize, independently of any special legislation authorizing it. Wheat. Mar. Capt. 14, § 3; Genoa and Its Dependencies, 2 Dod. 444; Pratt, Prize Prac. 115; 2 Wheat. App. 71, by Story, J.; The Donna Barbara, 2 Hagg. Adm. 366; The Charlotta, 1 Dod. 388; The Melomane, 5 C. Rob. Adm. 51. No legislation was required in respect to the seizure of enemy property found within the belligerent territory at the commencement of hostilities. The case of Brown v. U. S., 8 Cranch [12 U. S.] 110, only calls for such legislation when the seizure is made within the territory of the captors.

In the first suit above named, the launches or small boats of the gunboats acted under the full powers of the gunboats themselves, in effecting the capture; and, therefore, there is legal cause for the attachment of the property as prize. The vessels, when seized, having been deserted by their crews, the libellants are entitled to prove the facts and circumstances of the capture by other testimony. The assistant surgeon, then acting on board the Albatross, was present, and proves that the property seized was within the enemy's territory. No person appearing to the suit, or giving evidence as to the innocence of the cargoes so seized, the libellants are entitled to a judgment of condemnation and forfeiture of the cargoes, as enemy property and prize of war, upon the regular default entered. 2 Wheat. App. 20.

The distinction in respect to the second above-named suit is, that the rice there captured was not water-borne when seized, but was found stored in a warehouse in the enemy's country, contiguous to the river up which the United States vessels were pursuing the enemy's vessels, which were, seemingly, endeavoring to convey the two parcels of rice to the enemy's troops in Charleston. The river on which the warehouse stood communicated with Charleston harbor, and was entered by the ship of war and her boats. The warehouse and the rice deposited in it were captured by the launches of the Albatross and her consort. Rebel forces, stationed near the warehouse, fired upon the United States forces when making the capture, and the fire was returned at the time by the United States vessels which were engaged in the capture. The property was laden on

board of vessels of the captors, and was sent to New York for adjudication. The question specially presented in this suit is, whether the seizure on land was, in law, a maritime capture.

The libel is sufficient in form in a suit by the government. It might be vitally defective in a prosecution in behalf of private cruisers, unless subsequently ratified by the sovereign. Brown v. U. S., 8 Cranch [12 U. S.] 130–133. And, although no defence is interposed, the court will look at the record to see that the case is within its cognizance. The decision upon the merits, in Brown v. U. S.. went upon the principle that the enemy property there seized was landed in this country before the war commenced between England and the United States, and that it was not liable to capture as prize in the absence of positive law authorizing its seizure. The majority of the court who adopted that doctrine did not controvert the decision of the circuit court, declaring the suit to be of a prize character, nor the historical and judicial fact that the practice of the United States courts is governed by the rules of admiralty law disclosed in the English reports. Glass v. Sloop Betsey, 3 Dall. [3 U. S.] 6. It is very clear that in England the prize jurisdiction does not depend upon locality, but upon the subject-matter. As is said by Sir William Scott, in The Rebeckah, 1 C. Rob. Adm. 227, this was a maritime capture, effected by naval persons using a force subject to their use, distinguished from an ordinary land force subject to military persons, and was, therefore, a maritime prize. 1 Kent, Comm. 356.

The casks of rice proceeded against in the second suit are, therefore, properly confiscable as prize, being enemy property, captured by public vessels, in an enemy port. Decree accordingly.